IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2018 APR -4  AM 11: 03

STEPHAN HARRIS, CLERK
CHEYENNE

| | | |
|---|---|---|
| **JONMICHAEL GUY,** | ) | |
| | ) | Civil Action No. 18-CV-59J |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MICHAEL PACHECO**, Wyoming State Penitentiary (WSP) Warden; Jessica Martinez, WSP Mailroom Manager; Brittany Willis, (former) WSP Correctional Officer. | ) ) ) ) ) | |
| | ) | |
| | ) | |
| | ) | Jury Demand — Yes |
| **Defendants**. | ) | |

## COMPLAINT

JonMichael Guy, *pro se*, pursuant to 42 U.S.C. § 1983, brings this action upon allegations that the Defendants named herein, while acting under the color and pretext of state law, did deprive Plaintiff (hereinafter Guy) of rights, privileges, and immunities secured by the Constitution and laws of the United States by subjecting him to retaliation, deprivation of due process, and unlawful censorship in violation of the First and Fourteenth Amendments. Guy seeks injunctive relief, costs, compensatory, nominal, punitive and exemplary damages.

### JURISDICTION AND VENUE

1. This action is authorized by 42 U.S.C. § 1983 to redress the deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States.

2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

3. Guy has once brought an action in a court of the United States that was dismissed on the grounds that it failed to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g).

4. All acts and/or omissions alleged against the Defendants that gives rise to a cause of action in this matter transpired in Carbon County, Wyoming. Thus this Court has proper venue. *See* 28 U.S.C. § 1391(b); *see also Arnold v. Maynard*, 942 F.2d 761, 762 & n.2 (10th Cir. 1991).

## PARTIES TO THE ACTION

5. Plaintiff JonMichael Guy was at all times material hereto confined by the Wyoming Department of Corrections (DOC) at the Wyoming State Penitentiary (WSP) or the Wyoming Medium Correctional Institution (WMCI).

6. Defendant Michael Pacheco is, and was at all times material hereto, an agent of the DOC acting in his official capacity as the warden of WSP. Pacheco is sued for monetary damages in his individual capacity, and injunctive relief in his official capacity. He may be reached at PO Box 400, Rawlins, WY 82301.

7. Defendant Jessica Martinez is, and was at all times material hereto, an agent of the DOC acting in her official capacity as the mailroom manager for WSP. Martinez is sued for monetary damages in her individual capacity, and for injunctive relief in her official capacity. She may be reached at PO Box 400, Rawlins, WY 82301.

8. Defendant Brittany Willis was at all times material hereto an agent of the DOC acting in her official capacity as a property officer for WSP. Willis is sued for monetary damages in her individual capacity. Willis's whereabouts are currently unknown.

## ACTS COMMITTED UNDER COLOR OF STATE LAW

9. At all times material hereto, Willis, Pacheco and Martinez were individuals acting under the of color and pretext of state law by virtue of their employment with DOC and their position as Correctional Officer, Warden, and Mailroom Manager, respectively.

## **COUNT ONE - THREATS**

10. On January 17, 2006, Guy was received by the DOC at WSP in Rawlins, Wyoming, after spending nearly fourteen months in the Albany County Detention Center.

11. On June 20, 2013, Guy left WSP and spent the next (nearly) four years at either WMCI, or the Wyoming Honor Conservation Camp (WHCC).

12. On March 1, 2017, Guy returned to WSP from WHCC.

13. On or about April 28, 2017, Guy gave WSP property staff a box of legal paperwork (hereinafter 'package') to be mailed out. (DOC Policy requires property staff to process outgoing packages within seventy-two hours of receipt.)

14. On June 5, 2017, thirty-seven days after he gave the package to property staff, Guy sent communication forms (DOC Form #320[1]) to the business office and mailroom asking whether or not the package had been sent out or whether or not he had been charged for shipping.

15. On June 13, 2017, Guy spoke with property staff Dan Rogers asking about the status of the package. At that time Rogers informed Guy that '[the package] has already been sent out'.

16. On June 15, 2017, forty-six days after he gave the package to property staff, and two days after Rogers told him it had already been sent out, Guy received a response from the 320s he sent to the mailroom and business office informing him that the package had not yet been sent out and that he had not yet been charged for mailing the package out.

17. On June 15, 2017, Guy sent a 320 to Rogers informing him that the mailroom said Rogers had not given the package to them, and asking why it still had not been sent out.

18. The package was sent out on Friday, June 16, 2017, and Guy was made aware that it had been sent out on Monday, June 19, 2017, when he received a shipping receipt via in-house mail.

---

[1] DOC Form #320 is the second step in the Inmate Communication and Grievance Procedure.

19. On June 28, 2017, Willis responded to the 320 Guy sent to Rogers on June 15, 2017. In her response, Willis threatened to write Guy up for sending a 320. Specifically, in response to Guy's question, 'Why has this [package] still not went out', (sic) Willis responded, 'It already went out. You were AWARE of this! [ ] You are abusing the communication system and will be written up if it does not stop.' (Emphasis and all-caps in original.)

20. To Guy's knowledge, Willis has never threatened any inmates for using the grievance procedure, she does not have a rational, justifiable, or legitimate basis for issuing this threat, nor is issuing threats of this nature rationally related to any legitimate penological purpose.

21. Willis's threat was a direct response to and was motivated by Guy's good faith use of the Inmate Communication and Grievance Procedure.

22. On July 13, 2017, Guy filed a grievance (17-199) against Willis for retaliation via threatening him for his good faith use of the Inmate Communication and Grievance Procedure. Willis was made aware of grievance 17-199 through the grievance process itself, administrative action taken against her for issuing the threat, office gossip and other channels of communication.

23. Grievance 17-199, and the results thereof, provided motivation for the animus which led Willis to ultimately lose, destroy and improperly withhold Guy's property (see infra).

24. Under the sub-heading 'Retaliation Prohibited', DOC Policy #3.100 expressly enjoins staff, including Willis, from issuing inmates threats for their good faith use of the grievance procedure. Guy's June 15, 2017 320 to Rogers was such an exercise of good faith.

25. Willis has received extensive training on Policy #3.100, and so is well aware that she is not permitted to threaten or retaliate against prisoners for using the grievance procedure.

26. The WSP grievance manager determined that because documentation 'indicate[d] [Guy] did not become aware of the package being sent out until after the [June 15, 2017] [320] had

been sent to property', Willis's threat was 'unwarranted and unnecessary' and that the July 15, 2017 320 sent to Rogers 'should not have solicited the response [Guy] received.'

27. As a direct result of grievance 17-199, Willis was administratively disciplined, and was further required to undergo 're-training on Policy and Procedure #3.100 Inmate Communication and Grievance Procedure.'

28. Guy has sued the DOC and its officials a number of times, and has collectively filed several hundred grievances and grievance appeals against various DOC employees. Because of this activity, Guy has acquired a pervasive reputation throughout the DOC as a 'whiner', 'kite writer', 'jailhouse lawyer', 'legal beagle', etc. These terms are expressed and viewed pejoratively by DOC staff, including Willis, who view Guy as a 'snitch' who tells on staff.

29. Willis heard of Guy's reputation prior to June 28, 2017 through office gossip and other channels of communication. This knowledge provided additional motivation for the animus which prompted the abrasive and threatening 320 response Willis provided on June 28, 2017.

30. Willis's threat was an attempt to deter Guy from further engagement in the Inmate Communication and Grievance Procedure by intimidating him into reticence.

31. On November 1, 2107, Guy filed another grievance (17-369) against Willis for disrespecting him and providing him a false statement (i.e., lying) regarding an incoming package Guy had been waiting on.

32. Willis was made aware of grievance 17-369 through the grievance process, office gossip, and other normal channels of staff communication.

### COUNT TWO - LOSS AND DESTRUCTION OF PROPERTY

33. On November 14, 2017, Guy participated in a facility-wide mass shakedown in which all his property was carefully inspected and inventoried by one WSP staff and three staff witnesses.

34. On November 15, 2017, all of Guy's property was retrieved by WSP property corporal McMullen: Guy was being packed out to be transferred to WMCI. Such pack-outs and transfers are perfunctory processes performed nearly every day by all DOC property staff—including Willis—are guided by established DOC policy, and are not difficult or complicated procedures.

35. On November 15, 2017, outside of Guy's presence, Willis inventoried, boxed, and prepared all of Guy's property for shipment to WMCI. Guy left to WMCI the following day.

36. On November 21, 2017, with Guy present, his property was inventoried by not less than two WMCI property staff. During this inventory, an estimated $1,824.47 worth of Guy's property was missing and/or destroyed, other property having been wrongly confiscated by Willis. A number of the items that were lost, destroyed and wrongly confiscated by Willis are either irreplaceable or cannot be repurchased.

37. The specific items Willis lost[2], destroyed and wrongly confiscated were all inventoried, duly accounted for, and in good working order on November 14, 2017, during the mass shakedown.

38. On December 3, 2017, Guy filed a grievance (17-426) against Willis for losing, destroying and wrongly confiscating his property.

39. On December 8, 2017, Guy filed another grievance (17-432) against Willis for retaliation by way of losing, destroying and wrongly confiscating his property.

40. Willis was made aware of grievance 17-426 and 17-432 through the grievance procedure, office gossip, and other normal channels of staff communication.

---

[2] The word 'lost' is used reluctantly, as evidence suggests, and Guy hopes to prove through discovery or at trial, that Willis did not 'lose' anything, but purposely threw the 'lost' items away.

41.     The total cost to replace the property Willis lost, destroyed and wrongly confiscated is valued at an estimated $630.10.

42.     All items which Willis wrongly confiscated have been lost,[3] are unaccounted for, and were unavailable for investigative purposes during the execution of grievance 17-426.

43.     According to Policy #3.006, if an inmate elects to grieve the confiscation of property, that property "shall be stored at the facility through the duration of the grievance and appeal process." *Id.* Willis is well aware of this requirement, has received extensive training on Policy #3.006, and even sent Guy a letter signed by her stating the following:

> This is your notice that you have 30 days to communicate to the Property Department on how you wish to dispose of your property – options include disposal, donation to an approved department (need Warden's approval) or mail out at your expense. You will need to reply within 30 days by using Form 352 or these items will be disposed of (see Policy #3.006) [sic] Please inform us if you have begun the grievance process.

44.     Willis was thus required to safely keep and maintain all confiscated property until the final disposition of grievance 17-426, had direct knowledge of said responsibility, and deliberately neglected her responsibility by willfully losing the confiscated items.

45.     On November 15, 2017, Willis did manipulate official documentation (i.e., DOC Form #349) regarding her destruction of Guy's TV, attempting to establish that she did not personally destroy the TV so as to avoid responsibility for its destruction. (She tried to 'doctor' the books.)

46.     In grievance 17-426, Willis submitted false written statements to the grievance investigator regarding the management of Guy's property on November 15, 2017, attempting to establish that she did not personally destroy Guy's television and avoid responsibility for its destruction. (She tried to cover her tracks.)

---

[3] *See* footnote 2. Evidence indicates that Willis 'lost' some of these items in response to and in retaliation for grievance 17-426 and 17-432.

47. Willis was generally a competent property officer who worked in the WSP property department from at least June of 2017 until December of 2017; Pacheco even referred to her as a 'seasoned officer' in grievance 17-426. During her tenure in the property department, she routinely packed out a large number of inmates and did not lose, destroy, and/or wrongly confiscate their property. If she did, she would have been removed from the property department when higher-ups became aware of her doing so. Indeed, Willis *was* removed from the WSP property department shortly after she lost, destroyed and wrongly confiscated Guy's property.

48. Guy has never suffered the same degree of loss or damage to his property during a transfer despite having been incarcerated for over thirteen years and having been transferred several dozen times. Moreover, losing and destroying this much of an inmate's property is quite atypical and uncommon throughout the normal operations of the DOC.

49. Willis did willfully, arbitrarily, deliberately, and maliciously lose, destroy and confiscate approximately $610.30 worth of Guy's personal property out of retaliation for Guy's participation in the inmate communication and grievance procedure, for Guy filing multiple grievances against her, and for Guy getting her into trouble by filing grievance 17-199.

50. Willis does not have any rational, justifiable, or legitimate excuse for losing, destroying or confiscating $630.10 worth of Guy's property, nor is losing, destroying or confiscating $630.10 worth of Guy's property rationally related to any legitimate penological purpose.

51. The acts of Willis as described herein were committed with such willful and wanton disregard of the consequences, DOC Policy, and Guy's clearly established constitutional rights, that Willis should be ordered to pay exemplary and punitive damages in such amount as will deter her and others similarly situated from such misconduct in the future.

## COUNT THREE - CENSORSHIP

52. In accordance with established DOC Policy, only a facility warden or his/her designee is authorized to deny a publication's delivery to an inmate

53. On October 5, 2017, WSP received the October 2017 issue of *Inked* magazine which was addressed to Guy. Guy had been a subscriber to *Inked* (formerly *Skin & Ink*) for several years.

54. On October 5, 2017, under the direct and express instruction from Pacheco, Martinez rejected the October 2017 issue of *Inked* magazine (hereinafter issue) for purported nudity—Pacheco and Martinez complaining that more than four pages of the issue contained nudity.

55. Neither Pacheco nor Martinez have any rational reason for rejecting this issue, rejecting it is not rationally related to any legitimate penological goal, and rejecting it violates DOC Policy.

56. DOC Policy #5.401 defines nudity as,

> A pictorial depiction where male or female genitalia are exposed, where male or female buttocks are fully uncovered and/or any portion of the anus is exposed, or female breasts including any portion of the areola and/or nipple, are exposed. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

57. *Inked* is a non-nude tattoo lifestyle periodical which covers music, fashion, art, sports, and the general lifestyle of the tattooed. The issue in question was dedicated to breast cancer survivors who proudly displayed the tattoos they received to cover mastectomy scaring, and to cope with and overcome the many tribulations associated with breast cancer and mastectomy surgery.

58. The DOC regulation concerning nudity does not apply to the issue in question because for a female breast to constitute nudity under this definition, it must show areola and/or nipple.

59. The issue in question depicted women who had had their breasts—including the areolas and nipples—removed, and had tattoos in place of their breasts. Some women in this issue were

nude from the waist up, displaying tattoos where their breasts had once been. Since these women do not have breasts, nipples or areolas, the issue did not (and could not) have contained nudity.

60. Thus, Martinez's rejection of this issue, and Pacheco's express direction to reject this issue, are reckless and exaggerated responses to the otherwise legitimate prohibition against nudity.

61. Pacheco and Martinez have a reputation for maliciously and arbitrarily rejecting *Inked* and other non-nude publications, claiming nudity is extant when in fact the publication being denied does not contain any nudity whatsoever according to the operative definition of nudity.

62. On October 6, 2017, and October 12, 2017, Guy sent Martinez two 320s regarding her rejection of the issue (Guy also sent a 320 to Pacheco on the 16th). Those 320s put her on notice that a grievance was forthcoming, she did anticipate a grievance on the issue, and prior to October 19, 2017, she was well aware of Guy's litigiousness and propensity to file grievances.

63. Guy also spoke with Ms. Quintana from the WSP mailroom staff on or about the week of October 10, 2017, informed her that if the mailroom did not deliver the issue in question he would 'be filing a grievance on the rejection', and asked her not to return the issue in question.

64. On November 1, 2017, Guy filed a grievance (17-366) challenging Pacheco's and Martinez's rejection of this issue. According to Policy #5.401, an

> inmate may use the inmate grievance system to request review of [a] rejection, in which case the item will be held for the appropriate disposition determined by the grievance process [and] prior to disposal mail room staff shall ensure there is not an unresolved/pending grievance.

65. Martinez, a near 20-year mailroom veteran, has undergone extensive training on Policy #5.401, knew she was required to safely keep and maintain this issue until final disposition of grievance 17-366, and failed to ensure a grievance was not pending disposition before she returned it.

66. In his response to grievance 17-366, Pacheco stated the issue was denied "[because] on the cover as well as throughout the magazine, women were depicted completely nude from the waist up displaying their tattoos."

67. In grievance 17-366, DOC Director Robert Lampert "determined that this issue of inked [sic] magazine did **not** violate the definition of 'nudity' according to policy." (Emphasis added.)

68. On October 19, 2017, Martinez recklessly, without any justifiable excuse or legitimate penological purpose, and in violation of DOC policy, did return the issue in question to the company, and did so as a means to censor its contents from Guy.

69. Guy has protected interests in receiving this (and any other) issue of *Inked*. These interests were violated by Pacheco's and Martinez's reckless and wanton disregard of DOC Policy and of Guy's constitutional rights (1) by Martinez rejecting—and/or Pacheco ordering the rejection of—the issue in question and (2) by Martinez recklessly returning the issue in question to the publisher.

70. At the time of the violations alleged herein, the prohibition against unlawful censorship was a clearly established principal which Pacheco and Martinez knew or should have known.

71. As a direct and proximate result of the acts of Pacheco and Martinez as described herein, Guy has suffered a violation to his Constitutional right to free speech; pecuniary damage; the loss of the October 2017 issue of *Inked*; and the loss of enjoyment of life.

72. The acts of Pacheco and Martinez as described herein were committed with such willful and wanton disregard of the consequences, DOC Policy, and of Guy's clearly established constitutional rights, that they should be ordered to pay exemplary and punitive damages in such amount as will deter them and others similarly situated from such misconduct in the future.

## FIRST CAUSE OF ACTION - RETALIATION VIA THREATS

73. Guy restates and re-alleges ¶¶ 1-72 of this complaint as if fully set forth herein.

74. Guy has a constitutional and well established right to participate in the inmate grievance procedure, and to use said procedure without threat of discipline or recrimination.

75. At the time Willis issued the threat described herein, the prohibition against issuing retaliatory threats for engaging in constitutionally protected activities was a clearly established principal which Willis knew or should have known.

76. Threats such as Willis's have a 'chilling' effect on engagement in protected activities, are unconstitutional, and violate Guy's First Amendment rights to freedom of speech, freedom of expression, access to the courts, and to petition the government for redress of a grievance.

77. Willis issuing a threat to Guy, in direct violation of DOC Policy and Guy's constitutional rights, in retaliation for writing 320s and filing grievances and lawsuits constitutes retaliation for Guy exercising his right to access the courts, petitioning the government for redress of a grievance, participating in the Inmate Communication and Grievance Procedure, filing grievances and lawsuits, and exercising his right to free speech, and therefore violates the First Amendment.

78. As a direct and proximate result of the acts of Willis as described herein, Guy has: endured violations to his First and Fourteenth Amendment rights; suffered indignity and humiliation; been deprived of a substantial amount of his personal property, including some irreplaceable property; suffered pecuniary damage; and loss of enjoyment of life.

## SECOND CAUSE OF ACTION - RETALIATION VIA PROPERTY

79. Guy restates and re-alleges ¶¶ 1-78 of this complaint as if fully set forth herein.

80. At the time of the violation alleged herein, the prohibition against losing, destroying and wrongly confiscating a prisoner's property out of retaliation for the prisoner's engagement in protected activities was a clearly established principal which Willis knew or should have known.

81. Depriving an inmate of $630.10 worth of personal property through loss, destruction and wrongful confiscation is adverse and has a 'chilling' effect.

82. Willis purposely and maliciously losing, destroying, and wrongly confiscating Guy's property, in direct violation of DOC Policy and Guy's constitutional rights, in retaliation for writing 320s, filing grievances against her, and getting her disciplined, constitutes retaliation for Guy petitioning the government for redress of a grievance, participating in the Inmate Communication and Grievance Procedure, filing grievances and lawsuits, and exercising his right to free speech, and therefore violates the First Amendment.

### THIRD CAUSE OF ACTION - DUE PROCESS ON PROPERTY

83. Guy restates and re-alleges ¶¶ 1-82 of this complaint as if fully set forth herein.

84. Guy has a protected interest in the property Willis lost, destroyed and wrongly confiscated which cannot be infringed upon without due process of law.

85. DOC will only reimburse an inmate or replace his/her property up to $500.00, and the State of Wyoming does not provide any alternative post-deprivation remedy for prisoners to recover property that was negligently lost or damaged by DOC staff.

86. Thus Guy does not have—and was deprived of—an adequate post-deprivation remedy to be compensated for the property Willis lost and destroyed.

87. Willis purposely and maliciously losing, destroying and wrongly confiscating over $500.00 worth of Guy's personal property, manipulating official documentation, failing to maintain the confiscated property at the facility until final disposition of Guy's grievance, and

providing false statements to the grievance investigator, in direct violation of DOC Policy and Guy's constitutional rights, deprived Guy of an adequate and/or meaningful post-deprivation remedy, and therefore violates the Fourteenth Amendment.

### FOURTH CAUSE OF ACTION - UNLAWFUL CENSORSHIP

88. Guy restates and re-alleges ¶¶ 1-87 of this complaint as if fully set forth herein.

89. Guy has a constitutional and well established right to receive mail in prison—in particular, to receive publications that do not interfere with legitimate prison regulations.

90. Pacheco directing Martinez to reject the October 2017 issue of *Inked*, and Martinez rejecting the October 2017 issue of *Inked*, in direct violation of DOC Policy and Guy's constitutional right to receive *Inked* magazine, constitutes unlawful censorship in violation of Guy's right to free speech, and therefore violates the First Amendment.

91. Martinez returning the October 2017 issue of *Inked* prior to the disposition of grievance 17-366 and failing to ensure a grievance was not pending prior to returning it, in direct violation of DOC Policy and Guy's constitutional rights, was an overt act intended to censor *Inked* magazine, violates Guy's right to free speech, and therefore violates the First Amendment.

### REQUEST FOR RELIEF

**WHEREFORE**, Guy respectfully requests that this Court grant the following relief:

92. Award compensatory damages against Willis in the amount of $630.10, or such other or greater amount as will fully reimburse Guy for the property Willis damaged and lost.

93. Award Guy any and all costs inherent to or arising from this action.

94. Award punitive and exemplary damages against Willis in the amount of $6,000, or such other or greater amounts to which Guy may be entitled.

95. Award punitive and exemplary damages against Pacheco in the amount of $1,000, or such other or greater amounts to which Guy may be entitled.

96. Award punitive and exemplary damages against Martinez in the amount of $2,000, or such other or greater amounts to which Guy may be entitled.

97. Award nominal damages against Pacheco and/or Martinez in the amount of $1.00.

98. Issue an injunction enjoining Pacheco and Martinez from censoring any publication in the future, including *Inked*, which does not clearly and obviously contain nudity.

99. Guy requests such other relief to which it may appear to this Court is just and proper.

Submitted on this 30th day of March, 2018.

_____
JonMichael Guy
WMCI #23934

## PLAINTIFF'S DECLARATION AND WARNING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the facts in this complaint are true to the best of my knowledge, information and belief. I understand if this certification is not correct, I may be sanctioned by the Court.

I agree to provide to Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

_____        3/30/18
Signature of Plaintiff                                Date

Jon Guy
Printed name of Plaintiff

**State of Wyoming**    )
                                      ) ss.
**County of Goshen**  )

Subscribed and sworn to before me, a Notarial Officer, this 30th day of March, 2018

Carol A. Korell 
Notary Officer
My Commission Expires:

CAROL A. KORELL - NOTARY PUBLIC
County Of Goshen   State Of Wyoming
My Commission Expires May 14, 2018

## CERTIFICATE OF SERVICE

I, JonMichael Guy, hereby certify that I have caused a true and correct copy of the above and foregoing document to be sent by First Class, postage prepaid, by placing the same within the WMCI institution U.S. mail box on this 30th day of March, 2018, addressed to the following:

U.S. District Court for the District of Wyoming
Clerk of the Court
2120 Capitol Avenue
Room 2131
Cheyenne, WY 82001

JonMichael Guy
WMCI #23934
Plaintiff, *pro se*
7076 Road 55F
Torrington, WY 82240
guyjon00@yahoo.com

Jon Guy
WMCI #23934
2076 Road 55F
Torrington, WY 82240

U.S. District Court
District of Wyoming
Clerk of the Court
2120 Capitol Ave.
Room 2131
Cheyenne, WY 82001

THIS IS AN UNCENSORED LETTER FROM AN INMATE AT THE WYOMING MEDIUM CORRECTIONAL INSTITUTION

